IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

ALVIN CUNNINGHAM,
*Defendant.*

CRIMINAL No. ELH-18-017

**MEMORANDUM OPINION**

In a Superseding Indictment filed March 22, 2018 (ECF 157), defendant Alvin Cunningham was charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846 (Count One), and possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Five). Pursuant to a Plea Agreement (ECF 539), he entered a plea of guilty on April 30, 2019, to the drug conspiracy offense. ECF 538. Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence ranging from 120 to 180 months of incarceration. ECF 539, ¶ 9. At sentencing on July 1, 2019 (ECF 606), the Court sentenced defendant to 151 months of imprisonment, with credit for time served since January 18, 2018. ECF 610.

Through appointed counsel, defendant has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 1222), along with a supporting memorandum (ECF 1222-1) (collectively, the "Motion"). He has also submitted three exhibits. These include defendant's Bureau of Prison ("BOP") records (ECF 1222-2), his request for compassionate release to the Warden (ECF 1222-3), and the death certificate of Tyra Alisha Wright, the mother of defendant's minor daughter, Chansey Davison (ECF 1222-4). In the Motion, defendant claims

1

that "extraordinary and compelling" reasons exist for his release because of the death of Ms. Wright, Chansey's primary caretaker. ECF 1222-1 at 8–9. The government opposes the Motion. ECF 1228 ("Opposition"). Cunningham has replied. ECF 1230 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, in part.

## I. Factual and Procedural History

On January 11, 2018, a federal grand jury in the District of Maryland returned an Indictment charging eighteen individuals, including Cunningham, with various offenses. ECF 1. Cunningham was charged in Count One with conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. *Id.* A Superseding Indictment was filed on March 22, 2018. ECF 157. Among other things, it added a new count against Cunningham: Count Five, charging felon in possession, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 6. In addition, a nineteenth defendant was added. *Id.* at 1.

As noted, pursuant to a Plea Agreement (ECF 539), defendant entered a plea of guilty to Count One on April 30, 2019. ECF 538. The offense carried a mandatory minimum term of imprisonment of ten years, with a maximum of life. ECF 539, ¶ 3. Under Fed. R. Crim. P. 11(c)(1)(C), the parties stipulated to a range of 120 months to 180 months of incarceration as the appropriate disposition. *Id.* ¶ 9.

The Plea Agreement contains a stipulation of facts. *Id.* at 10. The stipulation established that defendant was a member of the "Transformers" heroin shop, which operated in Baltimore in an area called "the Panyard." *Id.* Investigators placed a pole camera in the Panyard, which captured video evidence of drug trafficking by defendant and his co-conspirators. *Id.* Defendant

2

was observed conducting hand-to-hand narcotics transactions and handing drugs and drug proceeds to other co-conspirators.  *Id.*  Law enforcement also intercepted phone calls in which defendant and his co-conspirators discussed drug operations.  *Id.*  Moreover, on August 1, 2017, investigators observed defendant removing a handgun from a black bag and placing it in a stuffed animal.  *Id.*  Officers recovered the handgun, which was loaded with six rounds of ammunition. *Id.*  Defendant agreed that it was reasonably foreseeable to him that members of the conspiracy would distribute at least one kilogram of heroin.  *Id.*

Defendant's criminal record is lengthy.  The Amended Presentence Report (ECF 608, "PSR") reflects convictions for numerous drug and assault offenses and robbery with a deadly weapon.  *Id.* ¶¶ 24–38.  These convictions date to 1984, when defendant was just sixteen years old. *Id.* ¶ 24.  Defendant had 18 criminal history points.  *Id.* ¶ 39.  This equates to a Criminal History category of VI.  *Id.* ¶ 40.

The PSR also determined that Cunningham qualified as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines").  *Id.* ¶¶ 18, 41.  This increased defendant's offense level from 32 to 37.  *Id.* ¶¶ 17, 18.  After deductions for acceptance of responsibility under U.S.S.G. § 3E.1.1 (*id.* ¶¶ 19, 20), defendant had a final offense level of 34. *Id.* ¶ 21.  And, as a career offender, he again had a criminal history category of VI.  *Id.* ¶ 41. Defendant's advisory sentencing Guidelines called for a sentence ranging from 262 months to 327 months of imprisonment.  *Id.* ¶ 79.

At sentencing on July 1, 2019 (ECF 606), defendant was 50 years of age.  ECF 608 at 2. The Court imposed a sentence of 151 months of incarceration, with credit from January 18, 2018. ECF 610.[1]

Cunningham previously moved for compassionate release in August 2020.  ECF 733.  He supplemented it twice.  ECF 857; ECF 865 (collectively, the "First Motion").  In the First Motion, defendant claimed that he was particularly vulnerable to COVID-19 because he has "no immune system" as a result of the removal of his spleen after he was shot in 1991 in his upper chest and lower body.  ECF 733 at 2; ECF 865.  I denied the First Motion on the basis that there was no evidence that defendant was particularly vulnerable to COVID-19 and because he had served less than a quarter of his sentence.  ECF 867 at 4–5.

Defendant is currently 55 years of age.  *See* ECF 608 at 2.  He is presently incarcerated at FCI Schuylkill, located in Millersville, Pennsylvania.  *Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP Register Number 41724-037) (last accessed August 19, 2024).  He has a projected release date of December 30, 2028. https://www.bop.gov/inmateloc/.  Defendant has served approximately 79 months of his 151-month sentence, or approximately 52 percent.  *See* ECF 1222-1 at 3.

## II. Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, ___ F.4th ___, 2024 WL 3881520, at *3 (4th Cir. Aug. 21, 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v.*

---

[1] As discussed, *infra*, without the career offender enhancement, defendant's advisory sentencing Guidelines range would have been 151–188 months.  ECF 1131 at 13–14.

4

*Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  It is commonly termed the "'compassionate release exception.'"  *Moody*, 2024 WL 3881520, at *3; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").  Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at

*1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).  In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274,

279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 2024 WL 3881520, at *4; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 2024 WL 3881520, at *4; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis."  *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647.  Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate

release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. §

3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS."  It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence.  *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious

cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)."  § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "Limitation on Changes in Law."  It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."  U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment

to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[2]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*,

---

[2] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion).  Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at

656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).  And, in weighing the §
3553(a) factors, the court may consider the terms of a plea bargain.  *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to
acknowledge and address each of the defendant's arguments on the record when conducting a §
3553(a) analysis."  But, "'the record as a whole'" must demonstrate that the judge considered the
parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion.  *Malone*,
57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023
WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).  In particular, "the court must provide
an explanation sufficient 'to allow for meaningful appellate review' in light of the particular
circumstances of the case."  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28,
2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion
when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors
constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or
"commit[s] an error of law."  *High*, 997 F.3d at 187 (internal quotation marks omitted); *see
Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory"
consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case."
*Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir.
2021).  For example, "when a defendant 'present[s] a significant amount of post-sentencing
mitigation evidence, . . . a more robust and detailed explanation [is] required.'"  *United States v.
Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at
190) (alterations in *Cohen*).  In any event, "the court must provide an explanation sufficient 'to

allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).  And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 2024 WL 3881520, *5–6 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in the law.").  In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

   *Davis*, 99 F.4th 647, is illustrative.  The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.  According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis,

14

because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

### A.

The government does not dispute that Cunningham has exhausted his administrative remedies. ECF 1228 at 3. As explained, Cunningham attached to his Motion his request for compassionate release to the Warden. ECF 1222-3. That letter is dated March 5, 2024. *Id.* at 1. The Warden responded on March 18, 2024, denying Cunningham's request. ECF 1228-1.

Accordingly, Cunningham has met the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

### B.

Defendant has moved for his immediate release or, alternatively, a sentence reduction, claiming that his partner, Tyra Alisha Wright, has died. ECF 1222 at 1; ECF 1222-1 at 8. According to defendant, he and Ms. Wright have a daughter in common, Chansey Davison, who is approximately fifteen years old. ECF 1222-1 at 8; ECF 608, ¶ 62. Defendant claims that when he was arrested in connection with this case, Ms. Wright became the sole caretaker of Chansey. ECF 1222-1 at 8. Defendant submitted Ms. Wright's death certificate as an exhibit to his Motion. ECF 1222-4.

U.S.S.G. § 1B1.13(b)(3) states (emphasis added):

(3) Family Circumstances of the Defendant.--

> (A) *The death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

15

(B) The incapacitation of the defendant's spouse or registered partner when *the defendant would be the only available caregiver for the spouse or registered partner*.

(C) The incapacitation of the defendant's parent when *the defendant would be the only available caregiver for the parent*.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when *the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

According to defendant, "given that Chansey is [his] minor child, and given that Ms. Wright was Chansey's sole caregiver, and given that Ms. Wright is deceased, this Court should conclude that" he has established an extraordinary and compelling reason for his release. ECF 1222-1 at 9. I agree.

Effective November 2023, the Guidelines were amended. Of relevance, U.S.S.G. § 1B1.13(b)(3) was modified by Amendment 814. As the United States Sentencing Commission explains:

First, this modification expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. Second, the modification adds a new provision for cases in which a defendant's parent is incapacitated. Finally, the modification adds a second new provision that applies when similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-7SZQ.

16

Under the Guidelines, a defendant can establish an "extraordinary and compelling" circumstance based on the "*death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.*"   U.S.S.G. § 1B1.13(b)(3)(A) (emphasis added).   In denying defendant's request for compassionate release, the Warden of FCI Shuylkill stated, ECF 1228-1: "You must also provide proof [that] there are no alternative caregivers capable of caring for [defendant's] child.   You have provided no evidence that [Ms. Wright] was the only available caregiver for his child."   However, the plain language of the current Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child.

Prior to November 2023, when addressing motions for compassionate release based on similar circumstances, most courts considered whether there were alternative caregivers.   *See, e.g.*, *United States v. Mathews*, No. 2:19-CR-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023), *reconsideration denied*, No. 2:19-CR-41, 2024 WL 495539 (S.D. Ohio Feb. 8, 2024); *United States v. Lemon*, No. 4:16-cr-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021); *United States v. Cole*, No. CR 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021); *United States v. Simmons*, No. CR 15-0025 (PLF), 2021 WL 5074741, at *5 (D.D.C. Nov. 2, 2021) (citing cases); *United States v. Pearson*, No. CR 16-20601, 2020 WL 7706618, at *4 (E.D. Mich. Dec. 29, 2020); *United States v. Delgado*, No. 3:15-CR-246, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023); *United States v. Rivera*, No. CR 15-2990 RB, 2021 WL 6062828, at *2–3 (D.N.M. Dec. 22, 2021); *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020).   Courts placed the burden on the defendant to prove that other caregivers were not

17

available or suitable.  *See, e.g.*, *Mathews*, 2023 WL 5924411, at *3; *Lemon*, 2021 WL 1060142, at

*2; *Delgado*, 2023 WL 4552890, at *2; *Cruz-Rivera*, 2020 WL 5993352, at *7.

As stated, U.S.S.G. § 1B1.13(b)(3)(A) defines an "extraordinary and compelling"

circumstance as the "*death or incapacitation of the caregiver of the defendant's minor child* or the

defendant's child who is 18 years of age or older and incapable of self-care because of a mental or

physical disability or a medical condition."  (Emphasis added).  No requirement is mentioned with

respect to alternative caregivers.  In contrast, all three of the other "extraordinary and compelling"

family circumstances set forth in § 1B1.13.(b)(3) require the defendant to establish that there is no

available caregiver.

Section 1B1.13(b)(3)(A) is not ambiguous.  If the Sentencing Commission sought to limit

section 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available

caregiver, it would have said so.  This Court must construe the words of the Sentencing Guidelines

in accordance with their ordinary meaning.  *See United States v. Boler*, ___ F.4th ___, 2024 WL

3908554, at *5 (4th Cir. Aug. 23, 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021).

I cannot import a requirement that the Sentencing Commission failed to include.

I am not aware of any Fourth Circuit case that has addressed this issue.  But, several other

courts have recognized that, as to the death of the caregiver of the defendant's minor child, the

defendant need not establish that he is the only available caregiver.  *See United States v. Lanphear*,

No. CR 19-19-BLG-SPW, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024) (stating that "because

VanderRoest was the caregiver of [the defendant]'s minor child at the time of his death and *there

is no requirement that the defendant be the child's only available caregiver*, VanderRoest's death

qualifies as an extraordinary and compelling reason under § 1B1.13.") (emphasis added); *United*

*States v. Lou*, No. 05 CR 514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) ("That analysis ignores the express terms of the provision.  It is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care."); *United States v. Turner*, No. 18-CR-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) ("I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter.").

Chansey is a minor; she is defendant's child; Ms. Wright was her caregiver; Ms. Wright has died.  In light of Ms. Wright's death, defendant has established an extraordinary and compelling reason for compassionate release.  The government agrees.  ECF 128 at 11–12.

## C.

Having concluded that Ms. Wright's death constitutes an extraordinary and compelling ground for compassionate release, I next consider whether compassionate release would be consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a).

Defendant's crime is serious.  Although defendant did not have a leadership role in the Transformers drug trafficking organization, ECF 1131 at 27, he trafficked drugs with a loaded firearm that he was prohibited from possessing.  The combination of drugs and guns has had a devastating effect on many cities throughout the United States, including Baltimore.

Defendant also has a long history of substance abuse.  He first started smoking marijuana and heroin at age fourteen.  ECF 608, ¶ 70.  He described his heroin use before he was arrested in the instant case as a "dealer's habit."  *Id.*

The Court is mindful that defendant's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such

19

that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

Of import, defendant's criminal history is lengthy and troubling.   He was convicted of robbery with a deadly weapon when he was just sixteen years old. *Id.* ¶ 24.  He has been convicted of assault on multiple occasions. *Id.* ¶¶ 29, 31–32, 36.

In 1997, officers responded to the scene of a suspected assault by defendant on his girlfriend.  Defendant shoved his girlfriend against a wall in the presence of a police officer and stated that he should "kick her ass." *Id.* ¶ 29.  In 2007, defendant assaulted an employee of the Maryland Division of Corrections. *Id.* ¶ 36.  Defendant also has a conviction for fourth-degree burglary. *Id.* ¶ 32.

Equally concerning are defendant's multiple convictions for drug offenses.  In 1987, defendant was convicted of two counts of possession with intent to distribute LSD, cocaine, and barbiturates. *Id.* ¶ 25.  He also has convictions for cocaine and heroin distribution and drug conspiracy. *Id.* ¶¶ 28, 34, 35.  In addition, defendant has multiple convictions for possession of CDS. *Id.* ¶¶ 30, 33–34, 37–38.  That said, before defendant's arrest in the instant case, he had not been convicted of any criminal offense for approximately ten and a half years, aside from two convictions for drug possession.  ECF 610; ECF 608, ¶¶ 36–38.

Defendant has served several sentences of incarceration, but only two of them exceeded two years.  In 1988, following a conviction for two counts of possession with intent to distribute,

defendant was sentenced to ten years of incarceration.  ECF 608, ¶ 25.  However, all but five years were suspended.  *Id.*  Defendant received a concurrent four-year sentence for robbery and robbery with a deadly weapon.  *Id.* ¶ 24.  In total, defendant actually served about four years for both offenses.  *Id.* ¶ 25.  That was the longest State period of incarceration that defendant has served.

In 2006, for attempt to distribute narcotics and CDS possession, defendant was sentenced to eighteen months of custody, with all but 48 days suspended (probably time served).  *Id.* ¶ 34. And, for a resulting violation of probation, defendant received a sentence of one year.  *Id.*

In 2007, defendant was convicted of distribution of heroin and conspiracy to distribute heroin.  *Id.* ¶ 35.  He received concurrent sentences of three years of incarceration.  *Id.*  Also in 2007, defendant was convicted of the assault of a correctional employee, for which he received a nine-month consecutive sentence.  *Id.* ¶ 36.

Defendant's prior periods of incarceration did not deter him from committing the instant offense.  On the other hand, the six years and seven months that defendant has served in this case is the longest period of incarceration he has ever served.  *See* ECF 1331 at 20; ECF 608, ¶¶ 24– 38.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments."  *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the years since the initial sentencing."  *McDonald*, 986 F.3d at 412;

*see United States v. Martin,* 916 F.3d 389, 397 (4th Cir. 2019) (requiring an "individualized explanation" as to rehabilitative efforts). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

To be sure, rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release. *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

Cunningham earned his GED in May of 2021. ECF 1222-2 at 5. The Court commends him for doing so. Cunningham has also participated in several courses while in BOP custody, including public speaking, resume writing basics, and decision-making skills. *Id.* at 6. These efforts signal to the Court that Cunningham is making strides to rehabilitate himself.

Nevertheless, Cunningham incurred five infractions while incarcerated, which reflect poorly on his adjustment. *See* 18 U.S.C. § 3582(c)(1)(A)(ii) (A defendant's behavior while in

BOP custody is an important indicator of whether he remains a danger to the community).  In May 2020, Cunningham was disciplined for threatening bodily harm to another.  ECF 1222-2 at 7.  In November of 2020, Cunningham was disciplined for refusing to obey orders.  *Id.*  Defendant was punished in March 2020 for fighting with another innate.  *Id.* at 3, 7.  In August of 2022, defendant was disciplined again for fighting with another inmate.  *Id.* at 3.  And, Cunningham was punished in September 2022 for making a sexual proposal to a staff member.  *Id.*  These infractions counsel against a finding that defendant has been rehabilitated.  However, the Court notes that, as of the date Cunningham filed the Motion, he had not incurred any infractions for approximately a year and a half.  *See* ECF 1222-2 at 3, 7–8.

Section 1B1.13(c) is also relevant.  Ordinarily, a change in the law that is not retroactive may not be considered to determine whether there are extraordinary and compelling reasons for compassionate release.  But when, as here, a defendant establishes an extraordinary and compelling reason for compassionate release, the court may consider a change in the law to determine whether a sentence reduction is appropriate.  On balance, this is such a case.

Citing *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), defendant contends that, if he were sentenced today for the same offense—conspiracy to distribute heroin—he would not qualify for the career offender enhancement that he received.  ECF 1222-1 at 10 n.9.  In *Norman*, 935 F.3d at 237, the Fourth Circuit held that a drug conspiracy conviction under 21 U.S.C. § 846 does not constitute a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2(b).

Here, Cunningham pleaded guilty to drug conspiracy.  Under *Norman*, 935 F.3d 232, drug conspiracy does not qualify as a threshold offense for the purpose of the career offender enhancement.  Therefore, if Cunningham were sentenced today, he would have a final offense level

of 29, not 34.  *See* ECF 608, ¶¶ 17, 20.  But, he would remain a criminal history category of VI.  His sentencing Guidelines would be 151 to 188 months of incarceration, not the 262–327 months of incarceration that was previously established.  *See* ECF 1131 at 13–14.

To be sure, defendant's sentence falls within the revised Guidelines.  But, the Court cannot say that defendant's career offender designation was of no significance to the Court in arriving at the sentence that the Court imposed.

Relatedly, one of the sentencing factors, 18 U.S.C. 3553(a)(6), addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  In my view, the change in the law has created such an unwarranted sentence disparity.  For example, the lead defendant in this case was a supplier of heroin to two different drug shops.  ECF 647, ¶¶ 7, 8.  But, he was not deemed a career offender.  Defendant, on the other hand, was not a supplier; he was a street-level dealer.  ECF 608, ¶ 5.  And, both defendant and the co-defendant illegally possessed a firearm in furtherance of the drug trafficking operation.  ECF 647, ¶ 10.  Although the co-defendant had a criminal history category of IV, not VI, *id.* ¶ 39, he still had a serious prior record.  Nevertheless, pursuant to a C plea, the co-defendant, who had a far more significant role in the case, received a sentence of 120 months of imprisonment.  ECF 563, ¶ 9; ECF 645 at 2.  I am left to conclude that defendant's status as a career offender contributed to the disparity in the government's sentencing recommendations.

### D.

For the reasons stated, a reduction of defendant's sentence to time served would not promote respect for the law.  But, the First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its

evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020). Accordingly, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact.  The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release.  *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at *5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37–38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, 461 F. Supp. 3d 343 (W.D. Va. 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer.  18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions.  A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

As I see it, the period of incarceration that Cunningham has served to date is not sufficient to warrant his immediate release.  Again, defendant's offense was serious, his criminal history is lengthy and disturbing, and he has incurred several infractions during his incarceration.  On the other hand, defendant appears to have made strides towards rehabilitation.  Moreover, he has already served a longer sentence than any sentence he has previously served.  The severity of his sentence has also been increased beyond what was originally anticipated because of COVID-19.

And, perhaps most important, and as discussed, since the time of defendant's sentencing, the law has changed in a significant way.

I conclude that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing defendant's sentence from 151 months of imprisonment to 120 months of imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## IV.  Conclusion

For the foregoing reasons, I shall grant defendant's Motion for Sentence Reduction (ECF 1222), in part.  Specifically, I shall reduce defendant's sentence from 151 months to 120 months of imprisonment.

An Order follows, consistent with this Memorandum Opinion.  And, an Amended Judgment shall issue.

Date: September 4, 2024                        _____/s/_____
                                               Ellen Lipton Hollander
                                               United States District Judge